**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------

LOGAN WILLIAMS,                                      X
                                                     :
                    Plaintiff.                       :      CIVIL ACTION NO. 1:20-CV-07783
                                                     :      (JGK)
v.                                                   :
                                                     :      **ANSWER AND COUNTER-CLAIM**
MARATHON CAPITAL OF ILLINOIS,                        :      **ON BEHALF OF DEFENDANTS**
LLC d/b/a MARATHON CAPITAL, LLC,                     :      **MARATHON CAPITAL OF**
TED BRANDT, CHUCK HINCKLEY and                       :      **ILLINOIS, LLC d/b/a MARATHON**
PHILLIPE LAVERTU,                                    :      **CAPITAL, LLC, TED BRANDT and**
                                                     :      **PHILLIPE LAVERTU ("MARATHON**
                    Defendants.                      X      **DEFENDANTS")**

------------------------------------------------------------

Defendant Marathon Capital of Illinois, LLC d/b/a Marathon Capital, LLC ("Marathon")

by its attorneys, and defendants Ted Brandt and Phillipe Lavertu, by their attorneys (collectively

"Marathon Defendants"), hereby allege for their Answer to the Complaint:

    1.    Marathon Defendants deny each and every material allegation of discrimination,

harassment, retaliation, aiding and abetting and/or any violation of statute, alleged in the

Complaint, and aver:

        a.    Marathon is a FINRA regulated financial advisory firm, headquartered in

            Chicago, which prohibits discriminatory, harassing and retaliatory conduct

            affecting employees, maintains robust internal processes for employees to

            voice complaints, and seeks diversity and inclusion among its employees

            among whom over 40% currently identify as members of minority groups

            and speak more than a dozen, non-English languages.

        b.    It is against this backdrop that Plaintiff became a Marathon employee.

            Although Plaintiff did not have a degree in business or finance, had no job

            experience in investment banking or financial advisory work, and did not

have security industry licenses, Marathon nevertheless created an Office Coordinator position for her, in 2019 so that — as Plaintiff requested — she could get her "foot in the door" at an investment banking firm and gain knowledge about the industry.  To facilitate her entry into the firm, her job, and the industry, Marathon created a dual reporting structure for Plaintiff, with both a female and male supervisor.

    c.    And Marathon's procedures functioned, here, as they should.  Within hours of Marathon's receipt of Plaintiff's report regarding potentially inappropriate behavior by a Marathon employee, co-defendant Chuck Hinckley (Complaint Paragraphs 11,12,13, 70-80) (the "Alleged Incident"), Marathon engaged a highly-respected and experienced independent investigator to investigate Plaintiff's report.  Marathon simultaneously placed Mr. Hinckley on leave with written instructions not to contact Plaintiff or others within Marathon until further notice.

    d.    In the course of the investigation that followed, Mr. Hinckley denied to the Investigator that the Alleged Incident took place.  Based on extensive review, the Investigation Report concluded:

> "Mr. Hinckley was far more credible with respect to the Alleged Incident than. . ." Plaintiff.

(Investigation Report, September 3, 2020, attached as Exhibit A, at 8):

    e.    Plaintiff's report, and her claims in this case, arise in the context of her June 24, 2020 voluntary resignation from Marathon.  Thus, a month before Plaintiff reported the Alleged Incident, Plaintiff had given Marathon 90 days notice of her voluntary resignation.  In the period between tendering

her resignation and reporting the Alleged Incident, Plaintiff sought help with her resume and career guidance (from among others Mr. Hinckley, Mr. Brandt and Mr. Lavertu.)  Further, on July 4, 2020, in a conversation with Mr. Brandt, Plaintiff sought a severance amount Marathon was unwilling to meet especially since Marathon's normal practice is to not pay severance to employees who resigned and had already agreed to cover the Plaintiff for 90 days to look for an alternate position.  Following that, conversations about Plaintiff's exit from Marathon and next career moves continued over the next weeks, without final resolution but with increasing an escalating demands for severance by the Plaintiff against veiled threats that she was "speaking to a Me Too Lawyer".  Indeed, in the days leading up to Plaintiff's report of the Alleged Incident, Mr. Lavertu repeatedly sought to schedule a video meeting with Plaintiff and Marathon's Human Resources function to finalize when Plaintiff intended to depart and exit details and arrangements.  Plaintiff, however, consistently refused to attend such a meeting including on July 22 when Mr. Lavertu repeated his efforts.  Two days later Plaintiff reported the Alleged Incident to Mr. Lavertu.

f.   By way of background, in or around April, 2019, Mr. Hinckley, who only a few months earlier had been named "co-head" of Marathon's approximately 8 person New York City Office, introduced Plaintiff to Mr. Lavertu and recommended Marathon hire her in an administrative position.  Plaintiff had no significant job experience in private enterprise let alone any in finance or investment banking and did not have any certification or degree in

3

business or finance.  Based on Mr. Hinckley's recommendation, Marathon engaged with Plaintiff for nearly the following four months to see if a "foot in did the door" opportunity could be structured for her.  At no time did Plaintiff or Mr. Hinckley reveal to Mr. Lavertu or anyone else at Marathon how they met or the nature of their relationship.  Ultimately, after considerable discussions with Plaintiff, at Mr. Hinckley's recommendation and at his urging, Marathon offered Plaintiff the job as Office Coordinator, which she accepted.

g.  Within months of Plaintiff starting employment at Marathon, both male and female Marathon employees in both Marathon's Chicago Headquarters and in the New York City office began to complain about Plaintiff's behavior.  Within Plaintiff's first 30 days at the job, a senior female executive in the New York Office reported to Mr. Lavertu and others by detailed email: "I have had admins for 30 years.  I have never experienced anything remotely like this.  I have offered to mentor and support her, have covered for her, have been patient but after today am at a loss with what to do. " (Investigation Report, Exhibit A, Exh. 3.)

h.  On information and belief, the female former employee named in Paragraphs 3, 46 48 and 49 of the Complaint as a victim of discrimination and misogynistic behavior whom Mr. Hinckley allegedly forced out of Marathon in January 2020, upon learning she had been so named, telephoned Plaintiffs' counsel and informed them: (i) Plaintiff's allegations about her are wrong on virtually every point; (ii)  contrary to Plaintiff's

4

allegations, this individual said she was not forced out of Marathon by Mr. Hinckley or anybody else (iii) this individual said Plaintiff's claims of discrimination and abusive behavior were simply not true in her experience; and (iv) this individual had no gender discrimination or harassment complaints about Marathon.

i.      On March 13, 2020, due to Covid, Marathon directed all its employees to work remotely, until further notice, and specified that Pre-approval, was necessary for office access.  Throughout March, April, May and June 2020, Marathon employees worked remotely for the most part due to COVID. Plaintiff mainly worked remotely during this period and had no known in-office contact with Mr. Hinckley.

j.      On April 12, 2020, Marathon cancelled Plaintiff's corporate credit because it was used for unauthorized expenses.

k.      The following week, for the first time, Plaintiff complained about Mr. Hinckley; the complaint had nothing to do with Plaintiff's gender, or gender discrimination or harassment; rather it focused on her feeling disrespected and embarrassed about how the company credit card was cancelled without prior notice to Plaintiff.

l.      Thus, in a text on April 30, 2020 wrote:

> "You are ruining my professional life.  I do everything for you and you don't defend me and throw me under the bus with Chicago and take my credit card away (Exhibit A, Exhibit 8 at p. 6).

m.      On June 14, 2020, Marathon began allowing a few employees to return to work at its offices, based on need.  By email of  June 18, Plaintiff notified

Mr. Lavertu that she would be an early return.  On June 23, Plaintiff invited
Mr. Lavertu and others to a virtual meeting to be held on June 24, to discuss
her leaving Marathon.

n.     At no time prior to submitting her voluntary resignation on 90-day notice
on June 24, 2020 did Plaintiff engage in any activity protected by any
statute.  At no time prior to submitting her voluntary resignation on 90 days
notice, on June 24, 2020, did Plaintiff make any complaint to Marathon
concerning gender-based discrimination or harassment.

o.     The Investigation Report, Exhibit A at p. 5 states:

> Ms. Williams said she did not report inappropriate conduct
> by Mr. Hinckley prior to the Alleged Incident, other than to
> the extent of her April 29 criticism of his administrative
> work (see Ex. 5) her April 29 email about the cancellation of
> her corporate credit card (id.), and her assertion that she told
> Mr. Brandt and Mr. Lavertu around early July that Mr.
> Hinckley was "abusive" to her and others.  Notwithstanding
> this assertion about abuse, according to text messages Mr.
> Hinckley provided, Ms. Williams told Mr. Hinckley on July
> 8 that, "I do care about you and… I am/have been loyal to
> you" and "I obviously want to make sure that you know/see
> you succeed in your plans" (see Ex. 8).  She also sought his
> advice from at least late June through mid-July regarding her
> career (id.)

p.     At no time during her employment with Marathon until July 24, 2020 did
Plaintiff make any complaint to Marathon that had anything allegedly to do
with gender discrimination or harassment; at no time during her
employment with Marathon prior to July 23, 2020 did Plaintiff engage in
any activity protected by any statute.

q.     Directly upon receiving Plaintiff's report on July 24, 2020 that the Alleged
Incident had occurred, Marathon engaged the independent investigator to

investigate, and Mr. Hinckley was notified in writing that he was relieved of duties and placed on leave with instructions not to communicate with Plaintiff or other Marathon employees pending the outcome of an investigation. The investigation proceeded over the course of several weeks with the voluntary participation of Plaintiff and Mr. Hinckley.

r.   Concluding that numerous inconsistencies and numerous changes in her narrative rendered Plaintiff's assertions about the Alleged Incident lacking in credibility, the Investigation Report (at pp. 8-10) states:

> "First, I do not find Ms. Williams' account that she saw Mr. Hinckley "shoving" his penis into his pants to be plausible given the configuration of the Conference Room and Mr. Hinckley's physique. According to Ms. Williams, she was standing at the Conference Room doorway when she saw Mr. Hinckley sitting in his chair in its "usual" place, not leaning back, with his right hand on the mouse on the table. Based on this description and my observation of the Conference Room and Mr. Hinckley's size, it does not appear that Ms. Williams would have been able to see below Mr. Hinckley's waist unless she bent down to look or Mr. Hinckley's chair was pushed back from the table. If he had been sitting back from the table, however, he likely would have been leaning forward to some degree to keep his right hand on the mouse, which likely would have caused his stomach to obscure his lap.

> Second, Ms. Williams' accounts of the Alleged Incident varied in certain respects. On July 23, she texted Ms. Rogers that she "walked in on [Mr. Hinckley] jerking off" and she "literally got a full visual," and in her Statement, she wrote that she came upon Mr. Hinckley "engaged in a sexual act," but she told me she saw Mr. Hinckley "shoving" his penis into his pants, not engaging in sexual activity. She later told me she saw him "shoving" his penis into his pants as she was walking away, which is not plausible unless she was walking backward or kept her head facing the Conference Room while she walked in the opposite direction.

> Similarly, Ms. Williams texted Ms. Rogers that Mr. Hinckley's "first reaction" was to close his screen, rather

than zip his pants and wrote something similar in her Statement, but she told me he was putting his penis in his pants, which he left unzipped, and "also" trying to close his screen.   Shortly after telling me this, she said he was "shoving it back into his pants" and "then trying" to close his screen.

Ms. Williams also wrote in her Statement that Mr. Hinckley "insisted" she "sit side-by-side with him" for more than an hour "to discuss work material."  She told me, however, that she was the one to ask whether he still wanted to go over her job search before she returned to the Conference Room; she sat across the table from him; he reviewed materials for her job search; and she felt free to leave.   Moreover, Ms. Williams appears to have spent approximately four hours in the Office on July 23.

Ms. Williams also described the Alleged Incident in her Statement as "premeditated," yet she told me she could not say whether it was intentional or "reckless disregard" for her. Moreover, she acknowledged that Mr. Hinckley did not know what time she would be arriving, did not hear her enter the Office, and was "incredibly startled" by her.   These assertions, if true, are inconsistent with Mr. Hinckley devising a plan to have Ms. Williams walk in on him masturbating.

Third, Ms. Williams included information in her Statement about other matters, which was inconsistent with what she told me.   For example, she wrote that Mr. Hinckley "specifically accused [an employee] of 'fucking her way to the top'" during a meeting with an external person.  She told me, however, that it was either Mr. Hinckley or the external person who "implied" that the employee was "protected," but she could not recall who said what or what was said. Moreover, she told me that Mr. Hinckley accused "every woman he interacted with" of sleeping with someone, but she identified only two women whom she allegedly accused. Similarly, in her Statement, she wrote that there were "multiple complaints from  multiple employees over the course of years" about Mr. Hinckley's behavior, but she did not have personal knowledge of any employees complaining to Marathon about Mr. Hinckley's conduct or information about the nature of any alleged complaints.

Fourth, Ms. Williams was not forthcoming or consistent about how she met Mr. Hinckley.  While she wrote in a July

28 email to Mr. Brandt and Mr. Lavertu that Mr. Hinckley hired her off an "escort" site, she told me on August 4 that she met Mr. Hinckley on a dating site. She subsequently said this was a mischaracterization and they met on a site where a woman is paid for her time. She also made references during our conversations to connecting with Mr. Hinckley on a "Sugar Daddy" or "Sugar Baby" site, which was consistent with Ms. Rogers' report of what Ms. Williams said on July 24.

By contrast, except to the extent Mr. Hinckley said he did not recall having any devices other than his phone out on July 23 while the NYC Event Log showed his iPad logged in all day, Mr. Hinckley appeared to be forthcoming with information. For example, he was forthcoming about the way he met Ms. Williams, that he did not disclose to Marathon how he met her, and that he only recently removed his profile from "What's Your Price" and any similar sites. He also was forthcoming in producing his pre-hire communications with Ms. Williams, including those in which he gave her information to help ensure she secured a job with Marathon."

s.     Based on the conclusion set forth in the Investigation Report. Plaintiff did not make the report of the Alleged Incident in good faith.

t.     Following her reporting the Alleged Incident, Plaintiff continued to seek severance in amounts which Marathon found unacceptable.

u.     Throughout August 2020, Plaintiff sent various Marathon employees and others texts which disparaged Marathon and its leadership.

v.     On August 22, 2020, Plaintiff sent a text disparaging Mr. Brandt.

w.     Plaintiff's behavior in sending these texts was not protected by any statute; it was harassing and disparaging. Marathon lawfully discharged Plaintiff.

x.     Plaintiff and Marathon are parties to an Employment Agreement which provides, among other things, in Paragraph 13:

Any controversy, claim or dispute arising out of or relating to this Agreement or the employment relationship, either

during the employment relationship or afterwards, between the parties…shall be settled in arbitration in Chicago, Illinois.  Such arbitration shall be conducted under the then prevailing rules of FINRA under the FINRA Code of Arbitration Procedure for Industry Disputes.

The Employment Agreement is attached to this Answer as Exhibit B.

2.     Marathon Defendants deny the allegations contained in Paragraph 1 of the Complaint and aver that following her 90 day notice of resignation from Marathon on June 24, 2020, Mr. Brandt, Mr. Lavertu and others had numerous communications with Plaintiff concerning severance benefits, editorial improvements to Plaintiff's resume, career counseling, training at Marathon to improve her credentials and industry knowledge, identifying potential future employers to support her job search and other related matters, and that on July 4, 2020, prior to Plaintiff engaging in any allegedly protected activity, in a conversation with Mr. Brandt, Plaintiff demanded severance pay in an amount she claimed to believe an individual, at several rungs of responsibility senior to her at Marathon, had received.  Plaintiff claimed that she "ran the office".  At some point in the conversation after Plaintiff had complained about the firm, her position and almost all the various personnel at Marathon, and demanded a substantial severance amount equal to a significant multiple of Plaintiff's annual salary, the Plaintiff then asked Mr. Brandt for help.  Mr. Brandt responded that he did not know if Plaintiff was a "friend or a foe" but that he would consider helping her.  Following up, Mr. Brandt, commencing the next day, worked with Mr. Lavertu to determine what more could be done by Marathon to help her find job opportunities and by facilitating Plaintiff's monitoring a professionally produced in-house course in financial modeling designed for Marathon interns in the investment banking functions.  Plaintiff expressed her excitement and gratitude for this professional development opportunity in emails and texts to Mr. Lavertu and others shortly after.

3.      Answering paragraph 2 of the Complaint Marathon Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 2 but aver Plaintiff never complained to Marathon about any behaviors such as alleged in Paragraph 2 of the Complaint.

4.      Marathon Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 3 of the complaint.

5.      Answering Paragraph 4 of the Complaint to the extent it makes factual allegations, Marathon Defendants deny the factual allegations set forth herein and aver that Marathon had instructed all Marathon employees, including the Plaintiff that they were not obligated to go to the office.

6.      Marathon Defendants deny the allegations contained in paragraph 5 of the Complaint and aver that Marathon is an equal opportunity employer and prohibits discrimination or harassment in employment of any kind. Marathon maintains robust equal employment, no discrimination and no harassment policies as well as an employee responsive mechanism for making and resolving complaints, and its workforce has significant diversity.

7.      Marathon Defendants deny the allegations contained in Paragraph 6 of the Complaint and aver that Plaintiff when asked to join Marathon's Women Initiative stated she did not believe in such groups.

8.      Marathon Defendants deny the allegations contained in Paragraph 7 of the Complaint.

9.      Marathon Defendants deny the allegations contained in Paragraph 8 of the Complaint and aver that directly following Plaintiff's report of the Alleged Incident, Marathon suspended Mr. Hinckley and directed him to have no contact with Plaintiff and caused the

engagement of an Independent Investigator to investigate Plaintiff's compliant, which resulted in the Investigation Report, Exhibit A hereto.

10.     Answering Paragraph 9 of the Complaint.  Marathon Defendants admit receipt of the text quoted in Paragraph 9 of the Complaint, refer to its terms and conditions as the best evidence of its meaning, and deny the construction sought to be imposed upon it by Plaintiff.

11.     Answering Paragraph 10 of the Complaint, Marathon Defendants refer to Plaintiff's text reproduced in Paragraph 9 of the Complaint, refer to its terms and conditions as the best evidence of its meaning, deny the construction of it implied by Plaintiff, and  otherwise deny the allegation contained in Paragraph 10 of the Complaint and aver that Marathon employees were told they had no obligation to be at the office because of COVID.

12.     Marathon Defendants deny knowledge or information sufficient to form a belief as to the truth the allegations contained in Paragraph 11 of the Complaint and refer to the Investigation Report, Exhibit A, for its conclusions and reasoning in response.

13.     Answering the allegations contained in Paragraph 12 of the Complaint, Marathon Defendants deny that the August 22, 2020 text was protected activity under any law, and otherwise deny knowledge or information sufficient to form a belief as to what additional complaints Plaintiff believes she made which constitute protected activity and aver that communications from Plaintiff in the period addressed in Paragraph 12 of the Complaint were not made in good faith and were not protected activity under any statute.

14.     Answering Paragraph 13 of the Complaint, Marathon Defendants aver that Plaintiff was lawfully terminated on August 24, 2020 and otherwise deny the allegations contained in Paragraph 13 of the Complaint.

15.     As Paragraph 14 of the Complaint does not set forth any factual allegations, it requires no answer.

16.     Answering Paragraph 15 of the Complaint, Marathon Defendants admit that Plaintiff purports to invoke this Court's diversity jurisdiction but respectfully refer to the Employment Agreement, Exhibit B, and its agreement to arbitrate this dispute.

17.     Marathon Defendants admit that Plaintiff purports properly to lay venue in this district.

18.     Answering the allegations contained in Paragraphs 17, 18 and 19 of the Complaint, Marathon Defendants deny the allegations contained in Paragraph 19 and aver as to Paragraphs 17 and 18 of the Complaint, on information and belief, that as of the date of this Answer Plaintiff has failed to provide notice that she had taken any of the necessary administrative procedure steps Plaintiff alleges she will take.

19.     Answering Paragraph 20 of the Complaint, Marathon Defendants admit that Plaintiff resided in New York State while employed by Marathon and otherwise due to the lack of particulars in the Complaint deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 20.

20.     Marathon Defendants admit the allegations contained in Paragraph 21 of the Complaint

21.     Marathon Defendants admit that Defendant Brandt is a Founder and the Chief Executive Officer of Defendant Marathon and a resident of the State of Illinois and otherwise deny the allegations contained in Paragraph 22.

22.     Marathon Defendants admit the allegations contained in the first sentence of paragraph 23 of the Complaint and otherwise deny the allegations in Paragraph 23.

23.     Marathon Defendants admit the allegations contained in the first sentence of paragraph 24 of the Complaint and otherwise deny the allegations in Paragraph 24.

24.     Marathon Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraphs 25, 26, 27, 28, 29 and 30 of the Complaint except admit that Plaintiff represented to Marathon that she had received a degree from Columbia University.

25.     Answering Paragraph 31 of the Complaint, Marathon Defendants admit that from January 2018 until August 2020 Mr. Hinckley was employed with the title of Managing Director of Marathon who, beginning on or about February 2019, served as co-head of the New York office and admit that Marathon acquired American Wind Capital Company in or about 2018 in consideration of a contingent equity interest which subsequently amounted to zero and otherwise deny the allegations contained in Paragraph 31.

26.     Marathon Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraphs 32 and 33 of the Complaint and aver that on July 28, 2020 Plaintiff represented to the Marathon Defendants that Mr. Hinckley hired her "off of the escort site," but that neither at the time of Plaintiff's hire in July 2019, nor until July 28, 2020, did she or Mr. Hinckley reveal to Marathon Defendants the nature or origin of any personal or other professional relationship they may have had prior to her employment with Marathon.

27.     Marathon Defendants admit the allegations contained in Paragraphs 34, 35, and 36 of the Complaint.

28.     Marathon Defendants deny the allegations contained in paragraph 37 of the Complaint.

29.     Answering Paragraph 38 of the Complaint, Marathon Defendants aver that at the time she was recommended by Mr. Hinckley to Marathon in April 2019, Plaintiff had neither a degree nor work experience in finance or investment banking.  Marathon Defendants further aver that Plaintiff was offered the job as Office Coordinator, at the insistance of Mr. Hinckley, notwithstanding her lack of relevant credentials or work experience for an investment banking job to help Plaintiff accomplish her stated goal of getting her foot in the door at an investment bank, and Plaintiff willingly accepted that job offer, and otherwise deny the allegations contained in Paragraph 38.  In addition, Marathon Defendants aver that neither Mr. Hinckley nor Plaintiff informed them in April 2019 or at any time prior to Plaintiff's report of the Alleged Incident that Plaintiff had met Mr. Hinckley, or formed a personal or professional relationship with him, through an escort or dating site or otherwise.

30.     Answering Paragraphs 39 and 40 of the Complaint, Marathon Defendants aver that they created a job for Plaintiff despite the fact that Plaintiff did not have relevant credentials or job experience to hold any investment banking position; Marathon Defendants further aver that they created this job at the request of Plaintiff who had no obligation to take it but instead willingly accepted the offer so that Plaintiff could, as she requested, learn about the industry.  Marathon Defendants deny the allegations contained in Paragraph 39 and 40 of the Complaint, admit the allegations contained in Paragraph 41 of the Complaint that Mr. Brandt is Marathon's Chief Executive Officer and Mr. Lavertu is Marathon's Chief Operating Officer, admit the individuals listed in Paragraph 39 hold the positions listed, admit the individuals listed in Paragraph 40 hold the positions listed, and further aver that  Marathon is an equal opportunity employer and prohibits discrimination or harassment in employment of any kind. Marathon maintains robust equal employment, "no discrimination" and "no harassment" policies, as well as an employee-responsive

mechanism for making and resolving complaints, and seeks diversity in its workforce with over 40% of employees identifying as members of minority groups.

31.     Marathon Defendants admit Plaintiff's first day of employment with Marathon was July 9, 2019 and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 42 of the Complaint.

32.     Marathon Defendants deny the allegations contained in the first sentence of Paragraph 43 of the Complaint, and deny knowledge or information sufficient to form a belief as to the truth of the allegation contained in the the second sentence of Paragraph 43 of the Complaint.

33.     Marathon Defendants deny the allegations contained in Paragraphs 44, 45, 46, 47 and 48 of the Complaint.

34.     Marathon Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraphs 49, 50 and 51 of the Complaint.

35.     Answering Paragraph 52 of the Complaint, which largely repeats the allegations contained in Paragraph 2 of the Complaint with additional allegations in footnote 2, Marathon Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 52 including those in the second sentence of footnote 2 thereto, and deny the allegations contained in the first sentence of footnote 2 thereto .

36.     Marathon Defendants note the lack of particulars in Paragraphs 53 and 54 of the Complaint and deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraphs 53 and 54 and aver that from March 2020 on, because of COVID, Plaintiff was under no obligation to be at the office, and that following her resignation notice on June 24, 2020 she had no assigned duties to perform at the New York office.

37.     Answering Paragraph 55 of the Complaint Marathon Defendants repeat and reallege Paragraph 5 of this Answer, as Paragraph 55 of the Complaint substantially duplicates Paragraph 7, deny the allegations contained in Paragraph 55 and aver that Mr. Brandt has never objectified a woman.

38.     Answering Paragraph 56 of the Complaint, Marathon Defendants deny Plaintiff was subjected to any hostile or harassing or discriminatory conduct and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 56 of the Complaint.

39.     Marathon Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 57 of the Complaint.

40.     Answering the allegations contained in Paragraph 58 of the Complaint, Marathon Defendants deny that Plaintiff engaged in any allegedly protected activity prior to her giving 90 day notice of voluntary resignation on June 24, 2020, deny Plaintiff complained about gender discrimination or harassment or that Plaintiff engaged in protected activity prior to reporting the July 23, 2020 Alleged Incident, aver that Plaintiff did not report the Alleged Incident in good faith, and further aver that Plaintiff at no time engaged in any activity protected by statute.

41.     Answering the allegations contained in Paragraph 59 of the Complaint, Marathon Defendants repeat and reallege Paragraph 2 of this Answer here as if set forth in full, aver that Plaintiff did not complain about gender discrimination or harassment during the July 4 conversation, and otherwise deny the allegations contained in Paragraph 59 of the Complaint.

42.     Marathon Defendants admit that Mr. Brandt received one or more text messages which he understood to be sent by Plaintiff containing the text reproduced  in Paragraph 60 of the Complaint, and otherwise deny the allegations contained in Paragraph 60 of the Complaint.

43.     Marathon Defendants deny the allegations contained in Paragraph 61 of the Complaint, aver that on June 24, 2020 Plaintiff provided ninety-day notice of her voluntary resignation, admit Mr. Brandt sent the text quoted in Paragraph 61 but refer to its terms and conditions as the best evidence of its meaning, and deny the construction sought to be imposed upon it by Plaintiff, and aver that Marathon included Plaintiff in a modeling training module  in July/August 2020.

44.     Marathon Defendants deny the allegations contained in Paragraph 62 of the Complaint.

45.     Answering Paragraphs 63, 64 and 65 of the Complaint, Marathon Defendants deny the allegations contained in the first sentence of Paragraph 63, deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second sentence of Paragraph 63, admit receipt by Mr. Lavertu of the July 13, 2020 text quoted in Paragraph 64, aver that in the July 13 text Plaintiff stated she would not be physically present at the office with Mr. Hinckley, aver that Marathon employees had no obligation to be physically at the office due to COVID and Marathon accepted Plaintiff's choice to work from home; aver that in any event, Plaintiff was, as of mid July 2020 engaged in a Marathon training program involving remote learning and deny the allegations contained in Paragraph 65.

46.     Marathon Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 66 of the Complaint.

47.     Marathon Defendants deny the allegations contained in Paragraph 67, 68 and 69 of the Complaint, except admit receipt of the text reproduced in Paragraph 67 and admit receipt of the texts reproduced in Paragraph 69 and refer to them for their terms and conditions.

48.     Marathon Defendants deny the allegations contained in Paragraph 70 of the Complaint and aver that Plaintiff had no obligation to be at the New York office from March 2020 on, and that in July 2020 Marathon had a remote only policy for employees, subject to permission to be physically present, which Plaintiff voluntarily sought.

49.     Answering Paragraphs 71, 72, 73, 74, 75, 76, 77, 78, 79 and 80 of the Complaint, Marathon Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in these paragraphs of the Complaint except admit that on July 23, 2020 Plaintiff went to Marathon's New York office, and that on July 24, 2020 Plaintiff reported the incident to Mr. Lavertu.

50.     Marathon Defendants deny the allegations contained in Paragraph 81 of the Complaint and aver that directly upon receipt of Plaintiff's report, Marathon arranged for a confidential investigation into it and so notified Plaintiff.

51.     Marathon Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraphs 82 and 83 of the Complaint except admit Mr. Bruno is engaged on specific matters as a Marathon consultant, and otherwise deny the allegations contained in Paragraphs 82 and 83.

52.     Answering Paragraphs 84 and 85 of the Complaint, Marathon Defendants deny they engaged in any effort to take advantage of Plaintiff or made any statement that she should get an attorney to rubberstamp a proposed severance agreement, deny that the discussions for severance, which predated Plaintiff's report of the Alleged Incident, were in any way made contingent upon Plaintiff's participation in the investigation of the Alleged Incident Marathon was commencing, and deny knowledge or information concerning Plaintiff's alleged state of mind or the other allegations contained in Paragraphs 84 and 85.

53.     Answering Paragraphs 86, 87 and 88 of the Complaint, Marathon Defendants admit Plaintiff notified them she had retained counsel, admit that Plaintiff emailed the statement quoted in part in Paragraph 87 to Mr. Brandt, Mr. Lavertu, Ms. Grant and Ms. Rogers, deny that the email was sent as part of Marathon's investigation, admit that Mr. Brandt sent the email quoted in Paragraph 88, otherwise deny the allegations contained, and aver that the Investigation Report quoted at Paragraph 1(l) of this Answer has found Plaintiff's versions of the Alleged Incident less credible than Mr. Hinckley's denial that various elements of the Alleged Incident took place.

54.     Marathon Defendants deny the allegations contained in Paragraphs 89, 90, 91 and 92 of the Complaint.

55.     Answering the allegations contained in Paragraph 93 of the Complaint, Marathon Defendants deny the allegations and aver that the Alleged Incident was under investigation, responded to by the Investigation Report and further aver that all times Plaintiff refused to meet with Marathon's HR function.

56.     Marathon Defendants deny the allegations contained in Paragraph 94 of the Complaint.

57.     Answering Paragraph 95 of the Complaint, Marathon Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations as to what Plaintiff may have done contained in Paragraph 95 of the Complaint.

58.     Marathon Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraphs 96 and 97 of the Complaint, except deny that Mr. Brandt directed anyone to engage in the purported conduct alleged in Paragraphs 96 and 97 of the Complaint.

59.     Answering Paragraph 98 of the Complaint, Marathon Defendants aver that on August 22, 2020 Plaintiff sent an email to virtually all Marathon employees and refer to it for its terms and conditions, which email was not protected activity under any statute.   Marathon Defendants admit that Plaintiff was thereafter denied remote access to Marathon systems, that an email was sent to Plaintiff so notifying her, and refer to said email for its terms and conditions and otherwise deny the allegations contained in Paragraph 98.

60.     Answering Paragraphs 99 and 100, Marathon Defendants admit that Plaintiff, who had voluntarily resigned and was on a 90 day paid severance  was then lawfully terminated and aver Plaintiff's activities were not protected under any statute, and admit that Plaintiff attended a termination meeting at which she made numerous untrue statements to which no response was necessary.

61.     Answering Paragraph 101 of the Complaint, Marathon Defendants repeat and reallege Paragraphs 1 through 60 of this Answer here as if set forth in full.

62.     Marathon Defendants deny the allegations contained in Paragraphs 102, 103, 104 and 105 of the Complaint.

63.     Answering Paragraph 106 of the Complaint, Marathon Defendants repeat and reallege Paragraphs 1 through 62 of this Answer here as if set forth in full.

64.     Marathon Defendants deny the allegations contained in Paragraphs 107, 108, 109 and 110 of the Complaint.

65.     Answering Paragraph 111 of the Complaint, Marathon Defendants repeat and reallege Paragraphs 1 through 64 of this Answer here as if set forth in full.

66.     Marathon Defendants deny the allegations contained in Paragraphs 112, 113, 114, and 115 of the Complaint.

67.     Answering Paragraph 116 of the Complaint, Marathon Defendants repeat and reallege Paragraphs 1 through 66 of this Answer here as if set forth in full.

68.     Marathon Defendants deny the allegations contained in Paragraphs 117, 118, 119, and 120 of the complaint.

With respect to each affirmative defense and counterclaim, Marathon Defendants repeat and reallege Paragraphs 1 through 68 of this Answer here as if set forth in full.

**FIRST AFFIRMATIVE DEFENSE**
**AND**
**COUNTERCLAIM**

69.     Pursuant to Paragraph 13 of the Employment Agreement, Exhibit B to this Answer, each and every claim alleged by Plaintiff herein is subject to arbitration before FINRA "under the FINRA Code of Arbitration Procedure for Industry Disputes."

70.     Plaintiff has failed and refused to submit the claims set forth in the Complaint to arbitration in accord with Paragraph 13 of the Employment Agreement.

71.     Plaintiff is in breach of Paragraph 13 of the Employment Agreement, by reason of the foregoing.

72.     Pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-9, arbitration of the claims alleged by Plaintiff in the Complaint herein is mandatory, because Plaintiff has committed in a written contract evidencing a transaction involving commerce to settle a controversy thereafter arising out of such contract, through arbitration.

73.     Pursuant to 9 U.S.C. §§ 2, 4, and 6 this Court, accordingly, should enforce Plaintiff's agreement to arbitrate and direct that Plaintiff submit each and every claim alleged in the Complaint to arbitration before FINRA as agreed in Paragraph 13 of the Employment Agreement.

74.     In the alternative, in the event this Court shall not direct arbitration of each and every claim Plaintiff alleges in the Complaint herein, pursuant to Paragraph 13 of the Employment Agreement, then Plaintiff's demand for a jury trial must be struck because Paragraph 13 of the Employment Agreement provides in relevant part

> "IF FOR ANY REASON THIS ARBITRATION CLAUSE BECOMES NOT APPLICABLE, THEN EACH PARTY, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY AS TO ANY ISSUE RELATING HERETO IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OTHER MATTER INVOLVING THE PARTIES HERETO."

## SECOND AFFIRMATIVE DEFENSE

75.     Plaintiff's Complaint fails, in whole or in part, to state a cause of action.

## THIRD AFFIRMATIVE DEFENSE

76.     Pursuant to Paragraph 14 of the Employment Agreement, Exhibit B, any claims Plaintiff may have are governed by Illinois law.

## FOURTH AFFIRMATIVE DEFENSE

77.     To the extent Plaintiff's claims are barred, either in whole or in part, by failure to exhaust administrative remedies and/or fulfill a condition precedent, Plaintiff is precluded from recovering on those claims.

## FIFTH AFFIRMATIVE DEFENSE

78.     Plaintiff's employment agreement contains an exclusive forum choice provision with which she has not complied.

## SIXTH AFFIRMATIVE DEFENSE

79.     Any adverse employment action taken with respect to Plaintiff was taken for legitimate, non-discriminatory and non-retaliatory reasons and was predicated upon a ground other

than Plaintiff's gender or exercise of statutorily protected right, and would have been taken absent Plaintiff's gender or exercise of a statutorily protected right.

## SEVENTH AFFIRMATIVE DEFENSE

80.     Plaintiff failed to make use of effective internal complaint procedures available to her.

## EIGHTH AFFIRMATIVE DEFENSE

81.     Plaintiff's damages claims are barred, in whole or in part, because Plaintiff failed to mitigate her damages.

## NINTH AFFIRMATIVE DEFENSE

82.     Plaintiff's claims for actual and consequential damage are speculative and therefore barred.  Plaintiff voluntarily resigned her employment with ninety day notice, on June 24, 2020.

## TENTH AFFIRMATIVE DEFENSE

83.     Marathon Defendants exercised reasonable care to prevent and correct promptly any discrimination or harassment, and Plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities provided by Marathon Defendants, or to avoid harm otherwise.

## ELEVENTH AFFIRMATIVE DEFENSE

84.     Marathon Defendants did not engage in discrimination or retaliation with willful or wanton negligence, or recklessness or a conscious disregard of the rights of Plaintiff or engage in conduct so reckless as to amount to such disregard of the rights of Plaintiff. Accordingly, Plaintiff may not recover punitive damages from Marathon Defendants.

## TWELFTH AFFIRMATIVE DEFENSE

85.     Plaintiff may not recover damages, including but not limited to punitive damages, from Marathon Defendants because Marathon Defendants had, prior to any discriminatory conduct alleged in the Complaint:

(1)     Established and complied with policies, programs and procedures for the prevention and detection of unlawful discriminatory practices by employees, agents and persons employed as independent contractors, including but not limited to:

(i)     A meaningful and responsive procedure for investigating complaints of discriminatory practices by employees, agents and persons employed as independent contractors and for taking appropriate action against those persons who are found to have engaged in such practices;

(ii)    A firm policy against such practices which is effectively communicated to employees, agents and persons employed as independent contractors;

(iii)   A program to educate employees and agents about unlawful discriminatory practices under local, state and federal law; and

(iv)    Procedures for the supervision of employees and agents and for the oversight of persons employed as independent contractors specifically directed at the prevention and detection of such practices; and

(2)     No record of prior incidents of illegal discriminatory conduct by defendant Hinckley, any other current or former Marathon employee or Officer or Marathon as an organization,

### THIRTEENTH AFFIRMATIVE DEFENSE

86.     Marathon Defendants' liability, damages, and penalties, if any, should be mitigated by virtue of the factors set forth in Section 8-107(13)(d) and (e) of the New York City Human Rights Law and Section 297(a) of the New York State Human Rights Law.

### FOURTEENTH AFFIRMATIVE DEFENSE

87.     Any act or omission by Marathon Defendants was taken in good faith, and Marathon Defendants had reasonable grounds for believing that such act or omission was not a violation of the applicable laws or any rights of Plaintiff.

### FIFTEENTH AFFIRMATIVE DEFENSE

88.     To the extent the New York City Human Rights Law purports to impose liability upon the Marathon Defendants for the alleged acts of Defendant Hinckley of which Marathon Defendants had neither knowledge nor notice either of the specific acts or of any prior alleged discriminatory conduct of defendant Hinckley, that enactment violates the Due Process Clauses of the New York State and United States Constitutions.

### SIXTEENTH AFFIRMATIVE DEFENSE

89.     Any award of punitive damages against the Marathon Defendants would violate the Due Process Clauses of the New York State and United States Constitution; Marathon Defendants did not commit any act with malice or reckless indifference to Plaintiff's protected rights, or with willful or wanton negligence or recklessness or conscious disregard of the rights of Plaintiff or engage in conduct so reckless as to amount to such disregard of the rights of Plaintiff or approve, authorize or condone or have actual or constructive knowledge of any such acts.

WHEREFORE, Marathon Defendants demand judgment on their counterclaim dismissing this action and directing Plaintiff to submit each and every claim alleged in the Complaint to arbitration before FINRA and granting such other and further relief as to the Court shall deem

proper or in the alternative dismissing the Complaint with prejudice, awarding them their costs and disbursements of this action including reasonable attorneys' fees, and granting such other and further relief as to the Court shall seem just once proper.

Respectfully Submitted,

By:   Greg Riolo
      Wendy J. Mellk
      JACKSON LEWIS P.C.
      44 South Broadway, 14th Floor
      White Plains, New York 10601
      (914) 872-6902
              and
      JACKSON LEWIS P.C.
      666 Third Avenue, 29th Floor
      New York, New York 10017

      *Attorneys for Defendants*
      *Marathon Capital of Illinois d/b/a Marathon*
      *Capital LLC, Ted Brandt and Philippe*
      *Lavertu*

              and

      Jonathan L. Sulds
      GREENBERG TRAURIG, LLP
      MetLife Building
      200 Park Avenue
      New York, New York 10166
      (212) 801-6882

      *Attorneys for Defendants*
      *Ted Brandt and Philippe Lavertu*

Dated: December 14, 2020
        New York, New York